UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Charlene Toro, | : | |
| | : | |
| PLAINTIFF, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| Ethos Clinic, | : | PLAINTIFF REQUESTS TRIAL BY JURY |
| | : | |
| DEFENDANT. | : | |
| | : | |

### PLAINTIFF'S CIVIL ACTION COMPLAINT

PLAINTIFF, Charlene Toro, by and through undersigned counsel, hereby files this Civil Action Complaint against DEFENDANT, Ethos Clinic, and avers the following:

### PARTIES

1. PLANTIFF is Charlene Toro, who at all times relevant hereto has resided in Blakeslee, Pennsylvania which is situated in Monroe County.

2. DEFENDANT is Ethos Clinic, who at all times relevant hereto conducts business in Lehighton, Pennsylvania, Carbon County.

3. At all times material hereto, DEFENDANT was the employer of PLAINTIFF.

### NATURE OF THE CASE

4. PLAINTIFF brings this action pursuant to the Americans with Disabilities Act, as amended, 42 USC 12203(b) et. seq. ("ADA"); the Family and Medical Leave Act, 42 U.S.C. § 12203(b) et seq. ("FMLA"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) et seq. ("ADEA"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. Sec. 951, et. seq. ("PHRC"), under the laws of Pennsylvania to remedy acts of employment discrimination against her by DEFENDANT. PLAINTIFF contends

that DEFENDANT discriminated against PLAINTIFF on the basis of her disability by failing to reasonably accommodate her limitations and otherwise treating her differently on the basis of and because of her disability, resulting in her termination from employment due to the same.

5. DEFENDANT should have offered job-protected, FMLA leave to PLAINTIFF in order to allow her to seek medical treatment for her serious health condition.

6. PLAINTIFF further contends that DEFENDANT discriminated against her on the basis of her age.

**JURISDICTION AND VENUE**

7. This action involves Questions of Federal Law under the Americans with Disabilities Act and related Amendments the Family Medical Leave Act, and the Age Discrimination in Employment Act.

8. Jurisdiction is proper in the Middle District of Pennsylvania as PLAINTIFF was and is at all relevant times domiciled in Blakeslee, Pennsylvania (Monroe County) and DEFENDANT regularly and continuously conducts business at all relevant times in Lehighton, Pennsylvania (Carbon County).

9. Venue is proper in the Middle District of Pennsylvania as PLAINTIFF worked for DEFENDANT in Lehighton, Pennsylvania when she was terminated from employment on or about December 17, 2020.

10. On or about June 1, 2021, PLAINTIFF dual filed a Charge of Discrimination with the Pennsylvania Human Rights Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") against DEFENDANT for Americans with

Disabilities Act ("ADA") violations and Age Discrimination in Employment Act of 1967 ("ADEA") violations as set forth herein.

11. On or about July 1, 2022, the EEOC issued a Notice of Right to Sue Letter to PLAINTIFF by regular mail upon request, as the administrative Complaints had been pending by that time for more than one year.

12. This action is hereby commenced within ninety (90) days of receipt of the Notice of Right to Sue Letter.

**MATERAL FACTS**

13. PLAINTIFF was hired by DEFENDANT as a licensed practical nurse (LPN) on or about November 17, 2017.

14. PLAINTIFF worked at DEFENDANT's Lehighton, Pennsylvania location.

15. PLAINTIFF was compensated at a rate of $30.00 per hour at the time she was terminated.

16. In early 2020, PLAINTIFF was diagnosed with ovarian cancer.

17. On February 21, 2020, PLAINTIFF underwent a hysterectomy procedure.

18. DEFENDANT was aware of both of PLAINTIFF'S medical diagnoses, which constitute disabilities under the ADA.

19. PLAINTIFF returned to work two weeks after her hysterectomy procedure.

20. PLAINTIFF continued to work for DEFENDANT until COVID-19 affected the business.

21. The impact of COVID-19 resulted in closure of the business for approximately one month between mid-March to mid-April of 2020.

22. PLAINTIFF worked from home from April 12, 2020, to June 1, 2020.

3

23. During the time PLAINTIFF worked from home, DEFENDANT required PLAINTIFF to take a 50 percent pay decrease.

24. When PLAINTIFF returned to the office setting, DEFENDANT cut PLAINTIFF's compensation rate by $5.00 per hour.

25. From June 1, 2020, until her termination date, PLAINTIFF missed several days of work due to her treatments for her medical diagnosis, including chemotherapy treatments.

26. Each date PLAINTIFF had to miss time from work due to her medical treatments, PLAINTIFF properly noted it on her work calendar and provided telephone notice of the same to DEFENDANT.

27. PLAINTIFF continuously kept up with her workload at all relevant times.

28. PLAINTIFF was receiving oral chemotherapy treatments for her cancer diagnosis in Late 2020.

29. On December 16, 2020, PLAINTIFF had an appointment with her treating doctor, Dr. Boulay.

30. During that appointment, Dr. Boulay recommended PLAINTIFF receive intermittent time off from work when she was not feeling well due to her chemotherapy treatments.

31. Following her doctor's appointment, PLAINTIFF informed DEFENDANT that same day via text message, that Dr. Boulay would be faxing over her FMLA paperwork regarding PLAINTIFF's need for intermittent time off.

32. The immediate next day, December 17, 2020, DEFENDANT terminated PLAINTIFF from employment.

33. DEFENDANT claimed the termination was a result of PLAINTIFF's poor work performance and the fact that she had not updated her certifications for 10 months.

34. However, in DEFENDANT'S termination email, Ayesha Abbasi, stated "We have gone beyond our capacity as a small practice and accommodated you but now it's not getting possible. It's the patient care involved here. I gave you multiple indications but you didn't take it seriously. This is my final email to let you know we won't be able to continue with you."

35. Contrary to DEFENDANT'S assertions, PLAINTIFF had not received any warnings or discipline for poor work performance prior to her termination date.

36. At the time of her termination, PLAINTIFF was 64 years of age.

37. The employee who took over PLAINTIFF's work responsibilities was significantly younger than PLAINTIFF.

## COUNT I

## DISCRIMINATION UNDER THE ADA – FAILURE TO ACCOMMODATE

38. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 USC Sec. 12112(a).

39. The ADA defined "disability" as "A) a physical or mental impairment that substantially limits one or more major life activities or such individual; B) a record of such impairment; or C) being regarded as having such an impairment." 42 USC Sec. 12102(1).

40. PLAINTIFF's ovarian cancer diagnosis constitutes a "disability" under the ADA.

41. DEFENDANT subjected PLAINTIFF to discrimination on the basis of her disability, failed to engage in the interactive process and refused reasonable accommodations to

PLAINTIFF by terminating her without allowing her to take intermittent days off when her chemotherapy treatments made it too difficult to work.

42. DEFENDANT furthermore did not, and would not have suffered undue hardship or unreasonable monetary expense by allowing PLAINTIFF to take intermittent days off when needed.

43. As a result of DEFENDANT's failure to reasonably accommodate PLAINTIFF's disability, PLAINTIFF was ultimately terminated from employment.

44. As such, PLAINTIFF's termination from employment was a direct violation of the ADA.

45. PLAINTIFF was, or would have been, able to perform the essential functions of her position with reasonable accommodation, but for DEFENDANT's illegal conduct.

## COUNT II

## DISCRIMINATION UNDER THE ADA – RETALIATION

46. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

47. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job procedures, the hiring, advancement, or discharge of employees, employment compensation, job training, and other terms, conditions and privileges of employment." 42 USC Sec 12112(a).

48. The ADA defines "disability" as "A) a physical or mental impairment that substantially limits one or more major life activities or such individuals; B) a record of such impairment; or C) being regarded as having such an impairment." 42 USC Sec. 12102(1).

49. The ADA and related case law and statutes define retaliation as an adverse action against a covered individual because he or she engaged in a protected activity. In the case of retaliation pursuant to the ADA, the protected activity would be seeking reasonable medical accommodation under the ADA.

50. PLAINTIFF's ovarian cancer, constitute a "disability" under the ADA.

51. PLAINTIFF obtained documentation from his treating physician outlining their recommended accommodations and attempted to provide the same to DEFENDANT.

52. DEFENDANT terminated PLAINTIFF before her doctor was able to provide DEFENDANT with the FMLA paperwork.

53. DEFENDANT retaliated against PLAINTFF for seeking reasonable accommodations under the ADA by refusing to accept the accommodations and terminating PLAINTIFF for requesting the same.

## COUNT III

## INTERFERENCE WITH RIGHTS UNDER FMLA 29 U.S.C. 2601, et seq.

54. PLANTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

55. The FLMA provides that an eligible employee is one who has been employed by the company for at least 12 months and for a minimum of 1,250 hours of service during the previous 12 months of employment 29 U.S.C. § 2611(4)(A)(i)-(ii).

56. An employer who must comply with FMLA "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

7

57. "An eligible employee shall be entitled to a total of 12 workweeks of leave during any 12 month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(B).

58. PLAINTIFF was employed by DEFENDANT for approximately three years and worked at least 1,250 hours per year she was employed by DEFENDANT.

59. DEFENDANT is engaged in an industry affecting commerce and employs more than 50 employees for more than 20 workweeks during each calendar year.

60. If DEFENDANT is found to have less than 50 employees, it has an internal policy which allows employees to request FMLA leave.

61. PLAINTIFF's diagnosis of ovarian cancer constitutes a "serious health condition" under the FMLA.

62. On December 16, 2020, PLAINTIFF informed DEFENDANT that her FMLA paperwork was being faxed to DEFENDANT.

63. PLAINTIFF was eligible for and had available FMLA leave at all times relevant and material hereto.

64. On December 17, 2020, one day after PLAINTIFF informed DEFENDANT that she was requesting FMLA, DEFENDANT terminated PLAINTIFF.

65. DEFENDANT should have accepted PLAINTIFF's request for FMLA in order for PLAINTIFF to undergo her needed medical treatment.

66. PLAINTIFF was illegally and unjustifiably terminated from employment by DEFENDANT on or about December 17, 2020, and was never given the opportunity to use her available job-protected leave.

## COUNT IV

## DISCRIMINATION UNDER THE ADEA

67. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

68. The ADEA makes it unlawful for an employer to discharge any individual or other otherwise discriminate against any individual because of such individual's age. 29 U.S.C. § 623(a).

69. The ADEA applies to private employers employing 20 or more employees who work each workday in each of 20 weeks during the current or preceding calendar year. 29 U.S.C. § 630(b).

70. Employees covered under the Act include current employees, former employees, and applicants who are at least 40 years of age or older. 29 U.S.C. § 631(a).

71. To prove discrimination under the ADEA, PLAINTIFF must be 40 years of age or older, suffer an adverse employment action, be qualified for her position, and be replaced by another employee who was "sufficiently younger to support an inference of discriminatory animus." *Smith v. City of Allentown*, 589 F.3d 684 at 689(3d Cir. 2009).

72. It is irrelevant whether the "substantially younger" replacement is outside the protected age group; what matters is only that the replacement is much younger. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996).

73. DEFENDANT employs more than 20 employees for more than 20 weeks in a year.

74. PLAINTIFF was an employee of DEFENDANT who was over the age of 40 when she was terminated from employment.

75. PLAINTIFF's date of birth is December 3, 1956.

9

76. PLAINTIFF was 64 years of age when she was terminated.

77. PLAINTIFF suffered an adverse employment action when DEFENDANT terminated her from employment.

78. Prior to her termination, PLAINTIFF did not receive any warnings or disciplinary action relating to her job performance, indicating she was at all relevant times, qualified for her position.

79. The individual who assumed PLAINTIFF's job duties was significantly younger than PLAINTIFF.

80. PLAINTIFF was discriminated against by DEFENDANT based on her age, in violation of the ADEA.

## JURY DEMAND

PLAINTIFF requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF demands judgement against DEFENDANT in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursement of action; and for such relief as the court deems just and proper.

**STARK LAW GROUP, LLC**

By:    s/ Eric J. Stark
      Eric J. Stark
      1370 Harrisburg Pike
      Lancaster, PA 17601
      Phone: 717-844-6350
      Email: eric@starklawllc.com

DATE: September 27, 2022